IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SECURE DATA TECHNOLOGIES, INC.,<br>Plaintiff,<br><br>v.<br><br>PRESIDIO NETWORK SOLUTIONS<br>GROUP, LLC, and<br>MICHAEL KENNEDY,<br>Defendants. | Case No. 20–CV–00133–JPG |

### MEMORANDUM & ORDER

This is a trade-secrets case. Before the Court is Defendants Presidio Network Solutions Group, LLC ("Presidio") and Michael Kennedy's Joint Motion to Dismiss. (ECF No. 29). Plaintiff Secure Data Technologies, Inc. ("Secure Data") responded, (ECF No. 31); and the defendants replied, (ECF No. 33). For the reasons below, the Court:

- **GRANTS IN PART AND DENIES IN PART** the defendants' Motion to Dismiss;

- **DISMISSES** Counts I and IV of the Complaint **WITHOUT PREJUDICE**; and

- **DISMISSES** Counts III and V of the Complaint **WITH PREJUDICE**.

**I.     PROCEDURAL & FACTUAL HISTORY**

Kennedy, a Missouri citizen, worked at Secure Data, an Illinois citizen, as an account manager from 2017 to 2019. (Compl. 2–4, ECF No. 1).

At the onset of the employment relationship, Secure Data and Kennedy agreed to an Employee Non-Compete Agreement containing the following non-solicitation provision:

>1. <u>Non-Competition and Non-Solicitation of Employees</u>. For a period of one year following the termination of Employee's employment hereunder (regardless of whether said termination was for cause or at-will) Employee shall not, directly or indirectly
>
>>(a) sell to or solicit business from (whether as a consultant, officer, director, owner, employee, partner or other participant) any past, current or prospective customer of the Company with which the Employee has had any contact during the two years preceding such termination; or
>
>>(b) solicit, or be instrumental in any way in soliciting, or hire, any person to leave the employ of the Company or any of its affiliates.

(Pl.'s Ex. 1, § 1, ECF No. 1-1).

Kennedy also agreed to protect Secure Data's confidential information:

>2. <u>Confidential Information</u>.
>>(a) From and after the date of this Agreement . . ., Employee shall treat as the Company's confidential information ("Confidential Information") all data, customer lists, information, ideas, knowledge and papers . . . which are not made public . . . . [S]uch Confidential Information shall include: the identity of customers . . . . Employee shall not reveal Confidential Information to others except in the proper exercise of Employee's duties and authority for the Company, nor use Employee's knowledge thereof in any way that would be detrimental to the interests of the Company. Employee shall also treat all information pertaining to the affairs of the Company's customers. . . with the same degree of confidentiality as he is obligated to treat the Confidential Information. Employee shall upon or prior to Employee's termination of employment with the Company turns over to the Company all copies of all documents, papers, memoranda, data, or other matter, whether published or unpublished and in whatever media they exist, which Employee may have or control relating to the Company or its customers, and that the same is and shall be the exclusive property of the Company . . . .

(*Id.* § 2).

Finally, Kennedy agreed to disclose the Employee Non-Compete Agreement to any future employer within two years of leaving Secure Data:

> 4. <u>Disclosure of Agreement</u>. Employee shall provide each of Employee's subsequent employers during the two year period following termination of this Agreement with a copy of this Agreement in order to avoid said subsequent employers from inadvertently causing the violation of this Agreement. Employee shall advise Employer of the identity of each of Employee's subsequent employers during the two year period following termination of this Agreement.

(*Id.* § 4).

While employed at Secure Data, Kennedy "had contact with all [of] Secure Data's clients and had access to Secure Data's customer lists." (Compl. at 3). He also "participated in Secure Data's weekly sales meetings in which Account Managers reviewed their current deals, new opportunities and targeted accounts." (*Id.*).

In January 2020, Kennedy informed Secure Data that he was leaving for Presidio, a citizen of Delaware and Texas. (*Id.* at 2, 4).

Before Kennedy's departure, "Secure Data sent a letter to both Kennedy and Presidio . . . ." (*Id.* at 4). It reminded Kennedy of his obligations under the Employee Non-Compete Agreement and cautioned Presidio against inducing a breach. (*See* Pl.'s Ex. 2, 1–2, ECF No. 1-2).

"Derek Herbison of Secure Data" also "reviewed the terms of the Agreement with Kennedy and clarified that [] Kennedy could not contact accounts that were previously his, clarified that he could not contact accounts he had contact with and that he could not contact existing Secure Data accounts. In that conference, Herbison gave as an example that Kennedy could not contact Mississippi Lime Company, which was on a no-contact list provided to Kennedy as an existing Secure Data account." (Compl. at 5–6).

On January 15, soon after Kennedy arrived at Presidio, one of his new coworkers sent a solicitation email to a Secure Data employee. (*Id.* at 6).

Later that month, Kennedy sent a solicitation email to "an employee of MFA Oil, which is a customer of Secure Data . . . ." (*Id.*). That employee "raised a concern with Secure Data that the . . . email was sent to him based on Confidential Information received by Kennedy while employed at Secure Data." (*Id.* at 7).

Sometime after, Kennedy also contacted Mississippi Lime Company "with the sole purpose of sole purpose of soliciting their business." (*Id.* at 7).

In February, Secure Data sued Kennedy and Presidio in this Court. (*Id.* at 1). Count I of the Complaint alleges that Kennedy breached the Employee Non-Compete Agreement. (*Id.* at 8). Count II alleges that Kennedy and Presidio violated the Illinois Trade Secrets Act (or "Act"). (*Id.* at 8–11). Count III alleges "injunctive relief" against Kennedy and Presidio. (*Id.* at 11–13). Count IV alleges that Presidio tortuously interfered with Secure Data and Kennedy's contractual relationship. (*Id.* at 13–14). And Count V alleges that Kennedy and Presidio were unjustly enriched by the misappropriation of Secure Data's confidential information. (*Id.* at 14).

Kennedy and Presidio moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss 1, ECF No. 29).

## II.   JURISDICTION & CHOICE OF LAW

Federal courts have original jurisdiction in civil cases when the amount in controversy exceeds $75,000 and the litigants are citizens of different states. 28 U.S.C. § 1332. Here, Secure Data is an Illinois citizen; Kennedy is a Missouri citizen; and Presidio is a citizen of Delaware and Texas. (Compl. at 2). The Complaint also states that the amount in controversy exceeds the

statutory minimum. (*Id.*). The Court therefore has subject-matter jurisdiction based on diversity of citizenship.[1]

Federal courts sitting in diversity jurisdiction apply state law to "substantive" issues, whether statutory or common law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991). Here, the litigants agree that Illinois law applies to the claims in the Complaint, so the Court will apply Illinois law.

### III.   LAW & ANALYSIS

Portions of the Complaint must be dismissed. Secure Data failed to adequately allege that Kennedy had *contact* with MFA Oil and Mississippi Lime Company to state a claim for breach of contract under § 1(a) of the Employee Non-Compete Agreement. Injunctive relief is also a remedy, not a cause of action. The Complaint also does not allege that Presidio *induced* Kennedy to breach the Employee Non-Compete Agreement and therefore fails to state a claim for tortious interference with contract. Finally, Secure Data's unjust-enrichment claim is barred by the Employee Non-Compete Agreement and partly preempted by the Illinois Trade Secrets Act. If it so chooses, then Secure Data can seek leave to amend the Complaint consistent with this Memorandum & Order.

#### A.  Legal Standard

The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

---

[1] The Court notes that its subject-matter jurisdiction may be imperiled by this Memorandum & Order: Although nominal damages are enough to state a claim for breach of contract, the amount in controversy must still exceed $75,000. (*See infra* Section III.b n.2).

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It follows that defendants can move to dismiss any part of the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Although "detailed factual allegations" are not required, the complaint must still "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

With that in mind, the Court is also "under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible legal theory." *See* Wright & Miller, 5B *Federal Practice and Procedure* § 1357 (3d ed. 2020) (emphasis added).

### B. Count I: Breach of Contract Against Kennedy

"Included among the elements of an enforceable contract are: (1) offer and acceptance; (2) definite and certain terms; (3) consideration; and (4) performance of all required conditions." *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927 (Ill. App. Ct.), *appeal denied*, 875 N.E.2d 1125 (Ill. 2007). In other words, the "plaintiff must establish that there was a wrongful act and that a loss or damages resulted directly from the wrongful act." *Econ. Fire & Cas. Co. v. GAB Bus. Servs., Inc.*, 507 N.E.2d 197, 201 (Ill. 1987).

The defendants contend that the Complaint fails to state a claim for breach of contract for at least two reasons. *First*, they argue that Secure Data did not properly allege that Kennedy violated § 1(a) of the Employee Non-Compete Agreement: It "never alleges that Kennedy had *contact* with [MFA Oil or Mississippi Lime] during the two-year period preceding his departure."[2] (Defs.' Mem. in Support 6–7, ECF No. 30). *Second*, they contend that Kennedy did not violate § 1(b) because he did not personally solicit any Secure Data employee.[3] (*Id.* at 7–9).

### 1.  Count I Does Not State a Claim Under § 1(a).

Section 1(a) prohibited Kennedy, either "directly or indirectly," from "sell[ing] to or solicit[ing] business from . . . any past, current or prospective customer of the [Secure Data] **with which [Kennedy] has had any contact** during the two years preceding" his departure. (Pl.'s Ex. 1, § 1) (emphasis added).

Secure Data contends that Kennedy "participated in . . . weekly sales meeting in which Account Managers reviewed their current deals, new opportunities and targeted accounts." And after Kennedy left for Presidio, Secure Data alleges that Presidio contacted two of Secure Data's clients, MFA Oil and Mississippi Lime. It does not allege, however, that Kennedy had *contact* with either. Sitting in on weekly discussions <u>*about*</u> MFA Oil and Mississippi Lime differs from

---

[2]  The defendants also assert that Count I should be dismissed because Secure Data does not allege how it was damaged by Kennedy's supposed breach. (Defs.' Mem. in Support at 9–10). But "a failure of proof of damages does not justify the dismissal of a claim for breach of contract . . . . The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990); *see also Chronister Oil Co. v. Unocal Ref. & Mktg.*, 34 F.3d 462, 466 (7th Cir. 1994) (Posner, C.J.) ("[E]very victim of a breach of contract, unlike a tort victim, is entitled" to nominal damages). "Thus, even if the breach caused no loss or if the amount of loss is not proved with sufficient certainty, the injured party can recover as damages as a nominal sum, commonly six cents or a dollar, fixed without regard to loss." E. Allan Farnsworth & Zachary Wolfe, *Farnsworth on Contracts* § 12.08 (4th ed. 2020).

[3]  Alternatively, the defendants argue that Count I should be dismissed because § 1(b) is overbroad and unenforceable. (Defs.' Mem. in Support at 7–9). But "[t]hese arguments all go to the merits. They require the court to assess the restrictions' reasonableness, an inherently fact-based determination that is not appropriate at this stage of the litigation." *See Lawson Prods., Inc. v. Chromate Indus. Corp.*, 158 F. Supp. 2d 860, 865–66 (N.D. Ill 2001).

*communicating with*, *reaching*, or *addressing* them. *See Contact*, Merriam-Webster, https://www.merriam-webster.com/dictionary/contact (last visited Oct. 6, 2020).

Even accepting the allegations as true, Count I does not state a claim under § 1(a) because the Complaint does not allege that Kennedy had contact with either MFA Oil or Mississippi Lime.

### 2.  Count I States a Claim Under § 1(b).

Section 1(b) prohibited Kennedy, either "directly or indirectly," from soliciting "any person to leave the employ of [Secure Data] . . . ." (Pl.'s Ex. 1, § 1).

The defendants argue that the Complaint fails to state a claim under § 1(b) because it "does not allege that *Kennedy* solicited any employees"—"*another* Presidio employee" did the solicitation. That may be true, but § 1(b) also prohibited Kennedy from *indirectly* soliciting Secure Data's employees. And the Complaint alleges that Presidio knew about O'Neil "based on the Confidential Information" that Kennedy "received from Secure Data."

Put differently, Count I states a claim under § 1(b) because Kennedy indirectly solicited a Secure Data employee.

### 3.  Count I States a Claim Under § 2.

Section 2 prohibited Kennedy from "reveal[ing] Confidential Information to others" or "us[ing] [his] knowledge thereof in any way that would be detrimental to the interests of [Secure Data]." (Pl.'s Ex. 1, § 2).

Although Count I does not explicitly reference § 2, a plain reading of Secure Data's allegations suggests that it intended to state a cause of action under that section. The central allegation, after all, is that Kennedy disclosed Secure Data's confidential information to Presidio, including its "customer lists, information," and "knowledge." (*See* Pl.'s Ex. 1, § 2; Compl. at 5–7). At this stage, Secure Data need not present affirmative evidence to support its claims; it is

enough for Secure Data to allege that Presidio's knowledge of Secure Data's clients and employees, given its solicitation attempts, stemmed from Kennedy. Simply put, Secure Data stated a claim for breach of contract under § 2.

With that in mind, the Court **DISMISSES** Count I **WITHOUT PREJUDICE** because of the deficient allegations relating to § 1(a).

### C.  Count II: Trade-Secret Misappropriation Against Both Defendants

The Illinois Trade Secrets Act prohibits the actual or threatened misappropriation of trade secrets. *See* 140 Ill. Comp. Stat. § 1065/1 *et seq.* (1988). It "defines 'trade secret' as including a customer list that '(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.' " *Jackson v. Hammer*, 653 N.E.2d 809, 816 (Ill. App. Ct. 1995) (quoting 140 Ill. Comp. Stat. § 1065/2). The employer must therefore show exclusive ownership of a customer list that is "the subject of reasonable efforts to maintain its secrecy." *See id.*

A trade secret must be defined according to the facts of each case and considered along with these factors: "(1) the extent to which the information is known outside the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of the measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and his competitor; (5) the effort or money spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated by others." *Jefco Labs., Inc. v. Carroo*, 483 N.E.2d 999, 1002 (Ill. App. Ct. 1985). "Of these factors, the most important is whether and how an employer acts to keep the information secret." *Jackson*, 653 N.E.2d at 816.

Illinois courts have cautioned against finding a *trade secret* when the employer failed to take affirmative measures "to keep its customer lists secret," such as increasing "internal or external physical security," entering into confidentiality agreements, keeping the lists "under lock and key, or [ensuring] that employees received entrance and exit interviews imparting the importance of confidentiality." *See id.* (citing *Gillis Assoc. Indus., Inc., v. Cari-All, Inc.*, 564 N.E.2d 881, 885 (Ill. App. Ct. 1990)); *Multiut Corp. v. Draiman*, 834 N.E.2d 43, 50 (Ill. App. Ct. 2005) ("Customer lists and pricing information have been recognized as trade secrets, although such determinations have hinged on the facts of a case."). *Compare Multiut Corp.*, 834 N.E.2d at 43 (limiting access to customer list and requiring employees to sign confidentiality agreements enough to show that customer list was a *trade secret*), *with Liebert Corp v. Mazur*, 827 N.E.2d 909, 921–24 (Ill. App. Ct. 2005) (customer list not a *trade secret* when company did not require employees to sign confidentiality agreement and did not inform employees that customer list was confidential)

The defendants argue that the Court should dismiss Count II for two reasons. *First*, they argue that Secure Data failed to allege the existence of any trade secrets. *Second*, they contend that even if it had, Secure Data still failed to allege that those trade secrets were misappropriated. The Court disagrees.

Secure Data did enough to ensure that Kennedy and others knew that its customer list was secret. This includes the non-solicitation provision itself, which informed Kennedy from the onset that Secure Data had in interest in guarding its customer list; the letter that Secure Data sent to Presidio, which reminded Kennedy of his obligations under the contract and informed Presidio of the same; and the conversation with Herbison clarifying that Kennedy could no longer contact Secure Data's clients. Although its customer list was not kept under lock and key, Secure Data

took reasonable efforts to maintain its secrecy, like entering into the Employee Non-Compete Agreement and writing to inform Presidio of Kennedy's obligations under it. The Court therefore agrees that "[t]he Confidential Information was sufficiently secret to" be considered a *trade secret*. (*See* Compl. at 9).

In sum, Count II states a claim under the Illinois Trade Secrets Act.

### D.  Count III: Injunctive Relief Against Both Defendants

Injunctive relief "is an equitable remedy that a court can provide when a party succeeds on the merits of its underlying cause of action but the available legal remedy is inadequate." *Town of Cicero v. Metro. Water Reclamation Dist.*, 976 N.E.2d 400, 415 (Ill. App. Ct. 2012). "This necessarily means that there must be a recognized cause of action underlying the request for injunctive relief and that the party seeking such relief must first prevail on the merits of the underlying cause of action." *Id.* at 414; *People v. J.T. Einoder, Inc.*, 2 N.E.2d 1097, 1111–12 (Ill. App. Ct. 2013) ("An injunction is only a remedy for an underlying cause of action and is not a cause of action in itself."), *rev'd on other grounds*, 28 N.E.3d 758 (Ill. 2015).

Because injunctive relief is a remedy and not a cause of action, the Court **DISMISSES** Count III **WITH PREJUDICE**.

### E.  Count IV: Tortious Interference with Contract Against Presidio

"The elements of the tort of interference with contractual relations . . . include: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Belden Corp. v. InterNorth, Inc.*, 413 N.E.2d 98, 101 (Ill. App. Ct. 1980).

With that in mind, the Illinois Trade Secrets Act "displace[s] *conflicting* **tort**, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation." 765 Ill. Comp. Stat. § 1065/8 (emphasis added). "In other words, if the operative facts are arguably cognizable under the [Act], any common law claim that might have been available on those facts in the past now no longer exist in Illinois." *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, No. 94 C 6884, 1999 WL 529572, at *3 (N.D. Ill. July 20, 1999).

Even so, "[e]nforcement of a non-disclosure agreement does not *conflict* with trade-secret law, and thus preventing third parties from inducing breach of such an agreement does not conflict with trade-secret law." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 586 (7th Cir. 2002) (emphasis in original) (applying Wisconsin law). Thus "[w]hen considering whether [the Act] preempts a claim, courts 'must determine whether that separate claim seek[s] recovery for wrongs beyond mere misappropriation.'" *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 835 (N.D. Ill. 2019) (quoting *Lumenate Techs., LP v. Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *7 (N.D. Ill. Nov. 11, 2013)). In other words, "claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404–405 (7th Cir. 2005) (applying Illinois law).

As discussed, Count II states a claim against both defendants under the Illinois Trade Secrets Act. That claim, however, focuses on the misappropriation of Secure Data's customer list—not its roster of employees: "They are known, and not secret." (Secure Data's Resp. to Defs.' Mot to Dismiss 9, ECF No. 31). The defendants' reliance on *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 834–35 (N.D. Ill. 2019), is therefore misguided: The tortious-interference claim in that case was preempted by the Act because the information that the defendants allegedly misappropriated was "not generally known," even though the information

did "not rise to the level of a trade secret." By contrast, Secure Data does not contend that its employee list is a trade secret or like one. Because Secure Data's tortious-interference claim does not rest on conduct that is said to misappropriate trade secrets, it is does not conflict with the Illinois Trade Secrets Act and is not preempted.

In any event, Count IV fails to state a claim for tortious interference with contract because the Complaint does not allege that Presidio *induced* Kennedy to breach the Employee Non-Compete Agreement. The Court therefore **DISMISSES** Count IV **WITHOUT PREJUDICE**.

### F. Count V: Unjust Enrichment Against Both Defendants

"Unjust enrichment is an equitable remedy based on a contract implied in law." *First Midwest Bank v. Cobo*, 90 N.E.3d 567, 575 (Ill. App. Ct. 2017). "To state a claim for unjust enrichment, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.' " *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. App. Ct. 1989)).

That said, "[u]njust enrichment is not an independent cause of action," so "[t]his theory is inapplicable where an express contract, oral or written, governs the parties' relationship." *Id.* "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004). "Thus, although a plaintiff may plead claims alternatively based on express contract and an unjust enrichment, the unjust enrichment claim cannot include allegations of an express contract." *Gagnon*, 983 N.E.2d at 1052; *First Midwest Bank*, 90 N.E.3d at 575 ("[A] party cannot state a claim for unjust enrichment where an express contract exists between the parties and concerns

the same subject matter."). In other words, "a plaintiff may not acknowledge throughout her complaint that there is an express contract, but then allege that if the defendant did not breach the contract, then it owes damages for unjustly enriching itself." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-cv-3633, 2019 WL 1254912, at 4 (N.D. Ill. Mar. 19, 2019). Here, Secure Data acknowledges that an express contract controls this dispute; and Count V therefore cannot proceed.

Moreover, unjust-enrichment claims, "when based on misappropriation of a trade secret, have been replaced under Illinois law by the Illinois Trade Secrets Act . . . ." *Spitz v. Proven Winners N. Am., LLC.*, 759 F.3d 724, 733 (7th Cir. 2014). As discussed, the Act "displace[s] conflicting tort, **restitutionary**, unfair competition, and other laws of this State providing civil remedies for misappropriation." 765 Ill. Comp. Stat. § 1065/8 (emphasis added). And because "[u]njust enrichment is essentially a claim for restitution," *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 619 (Ill. 1998), Count V is also preempted by the Illinois Trade Secrets Act as much as it relates to the misappropriation of Secure Data's customer list.

Secure Data's unjust-enrichment claim is barred by the Employee Non-Compete Agreement and preempted by the Illinois Trade Secrets Act (at least in part), so the Court **DISMISSES** Count V **WITH PREJUDICE**.

## IV.     CONCLUSION

The Court:

- **GRANTS IN PART AND DENIES IN PART** the defendants' Motion to Dismiss;

- **DISMISSES** Counts I and IV of the Complaint **WITHOUT PREJUDICE**; and

- **DISMISSES** Counts III and V of the Complaint **WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: Tuesday, October 6, 2020_____

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
